IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

MATTHEW D. P.,

                    Plaintiff,

        v.                                    Civil Action No.
                                              5:20-CV-1227 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

─────────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                      JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, P.C.                KENNETH R. HILLER, ESQ.
6000 North Bailey Ave, Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.              RONALD MAKAWA, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. § 405(g), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") benefits for which he has applied.  For the reasons set forth below, I conclude that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in April of 1974, and is currently forty-seven years of age.  He was forty-two years old on both his alleged onset date and at the time of his application for benefits in July 2017.  Plaintiff stands six feet and nine inches in height, and weighed between approximately three hundred and fifty-four and four hundred and four pounds during the relevant time period.  Plaintiff lives in a house in Fulton with his mother.  He and his wife are divorced, and, while he has children, they do not live with him.

---

[1]    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

In terms of education, plaintiff is a high school graduate, and has an associate's degree in business management as well as a bachelor's degree in business administration.  He has worked in the past as a manager for a variety of different businesses, as well as a distributor for a distilling company and a salesman/manager for a business that sells collectable stamps and coins.

Physically, plaintiff alleges that he suffers from a back injury with chronic pain, and foot injuries with chronic pain and arthritis.  He has received treatment for those impairments consisting of pain medication, physical therapy, lumbar spine surgery, and three surgeries on his left ankle.  During the relevant period, plaintiff treated for his physical conditions with Dr. Scott VanValkenburg at Upstate University Orthopedics Bone and Joint Center, Dr. Laura Martin at Family Care Medical Group, and sources at New York Spine and Wellness Center and Syracuse Orthopedic Specialists.

Plaintiff also alleges that he suffers depression related to his physical limitations and his divorce, for which he treated during the relevant period with Licensed Clinical Social Worker ("LCSW") Philip Zeppetello at Psychological Health Care.

Plaintiff has reported that he cannot do a seated desk job because he

3

is unable to sit still and has to move every twenty minutes.  Although his

back surgery was moderately successful at lessening his pain, he still

experiences back pain, which he rates as a six or seven out of ten.  Plaintiff

has undergone multiple surgeries on his left ankle and it is still "a disaster"

in that he can barely walk, he has no movement, and it is always either

painful or numb.  He takes gabapentin and Tylenol for his pain.  He was on

narcotic pain medication at one time, but he has stopped that because of

his past opioid addiction.  Plaintiff also uses a TENS unit for worsening

back pain that occurs when he is particularly active, which happens

approximately two or three times per month.  He reported that he cooks

dinner occasionally, can do laundry using the machines although it takes

him a while to bring the basket with the clothes all the way back up to his

room when he is done, can drive when necessary, can do minimal

vacuuming or dusting, and can shop with use of a motorized scooter cart,

although his mother does most of the shopping for them.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security

Act on July 3, 2017.  In support of his application, he alleged a disability

onset date of March 2, 2017, which he later amended to July 1, 2017,[2] and

claimed to be disabled based on a back injury causing chronic pain and

foot injuries causing chronic pain and arthritis.

A hearing was conducted on August 14, 2019, by ALJ Elizabeth W.

Koennecke to address plaintiff's application for benefits.  ALJ Koennecke

issued an unfavorable decision on August 28, 2019.  That opinion became

a final determination of the agency on August 7, 2020, when the Social

Security Appeals Council ("Appeals Council") denied plaintiff's request for

review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Koennecke applied the familiar, five-step

sequential test for determining disability.  At step one, she found that

plaintiff had not engaged in substantial gainful activity during the relevant

period.  Proceeding to step two, ALJ Koennecke found that plaintiff suffers

from severe impairments that impose more than minimal limitations on his

ability to perform basic work functions, including lumbar spine and foot

impairments.  As part of her step two finding, ALJ Koennecke also

concluded that plaintiff's additional medically determinable impairments of

obesity, depression, anxiety, and polysubstance abuse are all not severe.

---

[2]      Plaintiff was insured for benefits under Title II until December 31, 2021.

At step three, ALJ Koennecke examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.02 and 1.04.

ALJ Koennecke next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of sedentary work without any additional restrictions.

At step four, ALJ Koennecke concluded that plaintiff is unable to perform any of his past relevant work.  Proceeding to step five, ALJ Koennecke concluded that, based on application of the Medical-Vocational Guidelines ("Grids"), particularly section 204.00 and Medical-Vocational Rule 201.28, a finding of "not disabled" was directed.  Based upon these findings, ALJ Koennecke concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on October 6, 2020.[3]  In support of

---

[3]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

his challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the ALJ erred in failing to remedy the lack of any reliable opinion regarding plaintiff's physical functioning, despite acknowledging that such a gap in the record exists; (2) the ALJ failed to appropriately explain her finding that plaintiff is able to perform sedentary work, arguing that no opinion evidence supports that conclusion and the ALJ's assessment of the evidence was not adequate to support that finding; (3) the ALJ failed to properly assess plaintiff's need to use a cane in that even sedentary work requires some walking and the record reveals that plaintiff sometimes requires a cane when walking; (4) the ALJ failed to reconcile finding that the opinion from LSCW Zeppetello was persuasive with her failure to adopt – or explain why she rejected – his opined limitation that plaintiff would likely be absent one day per month; and (4) the ALJ erred in failing to consider a closed period of disability from July 1, 2017 to December 14, 2018, during which time plaintiff was recovering from surgery and not weightbearing.  Dkt. No. 22.

Oral argument was conducted in this matter, by telephone, on March 21, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

7

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

      B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

      The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

1.   The ALJ's Consideration of Plaintiff's Use of a Cane

When explaining her conclusion that plaintiff could perform a full range of sedentary work, the ALJ discussed a statement by treating orthopedist Dr. VanValkenburg that plaintiff can "choose to continue to use a cane occasionally in his right hand," concluding that, because that

11

comment was made in the context of Dr. VanValkenburg's indication that

plaintiff no longer needed any restrictions, limiting plaintiff to sedentary

work, "which involves standing and/or walking no more than two hours in

an eight-hour workday, obviates the need for an occasional cane."

Administrative Transcript ("AT") at 19.[4]  This is the only explanation

provided by the ALJ regarding her finding that plaintiff does not require use

of a cane throughout the workday.

Plaintiff argues that the ALJ's explanation is insufficient because it

fails to assess whether plaintiff would require a cane during the two hours

of the workday in which sedentary work still requires the ability to stand and

walk.  Dkt. No. 17, at 23-24.  The Commissioner counters by pointing out

that Dr. VanValkenburg never opined that plaintiff requires use of a cane

and that, as the ALJ acknowledged, he only indicated that plaintiff could

use a cane occasionally in the context of no other restrictions in his ability

to bear weight or otherwise use his ankle.  Dkt. No. 22, at 12-13.

Although I agree with the Commissioner that Dr. VanValkenburg's

statement regarding use of a cane is not a medical opinion, and therefore

did not need to be assessed with the particularities required by the

---

[4]      The Administrative Transcript is found at Dkt. No. 12, and will be cited in this decision as "AT ___."

regulations applicable to medical opinions, I also agree with plaintiff that the ALJ's explanation regarding why a limitation in the RFC finding allowing for use of an assistive device is not warranted is somewhat lacking in light of the evidence that was before the ALJ.  The ALJ appears to have interpreted the use of the word "occasional" in Dr. VanValkenburg's statement in the way that term is used in the regulations, meaning "occurring from very little up to one-third of the time," and since sedentary work would only require plaintiff to stand or walk for only two hours in an eight hour workday, any need for using a cane occasionally would be accommodated by the fact that he is able to sit for six hours in an eight hour workday.  Social Security Ruling ("SSR") 83-10.

However, when making this assessment, the ALJ does not discuss any of the treatment evidence which shows that plaintiff was still using a cane when attending medical appointments as late as 2019, and even after he was released to weightbearing without restrictions by Dr. VanValkenburg.  *See, e.g.*, AT 1086, 1090-92, 1096-97, 1103.  Indeed, in her treatment notes from this time period, Dr. Martin observed not only that plaintiff was using a cane, but also that he walked with an antalgic gait and had chronic ankle swelling.  *See, e.g.*, AT 1086, 1092, 1096-97, 1103. Although the ALJ was not required to discuss every piece of evidence in

the record to show that it was considered, her failure to acknowledge that plaintiff's treating provider noted that plaintiff consistently presented with a cane, even after his final surgery, when determining whether use of a cane was a necessary limitation, makes it unclear whether she appropriately and adequately considered all of the evidence in the record. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'")

The only other reasons provided by the ALJ that could be said to bear on her finding related to plaintiff's need to use a cane are the fact that plaintiff was weightbearing by early 2019, and plaintiff's reported daily activities. AT 19-20. However, the fact that plaintiff was able to bear weight on his left foot does not necessarily imply that he might not need to use a cane at times, and the activities the ALJ cites – some driving, preparing meals, doing some shopping, doing laundry, watching television, playing video games, dating, attending a basketball game, and buying a bike – also do not necessarily imply the ability to stand or walk for two hours in a workday without using a cane. Notably, many of these activities do not require standing or walking, and the ALJ's discussion of other activities that do require standing and walking does not appear to account

for the actual extent of limitation in those activities that plaintiff reported. For example, at the consultative examinations, plaintiff reported minimal effort in preparing food, "very minimal and light general cleaning," laundry once per week, and minimal shopping.  AT 377, 381.  Additionally, at the hearing, plaintiff reported that he uses a motorized seated cart when he has to shop and that he has to take breaks when carrying his laundry basket through the house.  AT 43-45.  The ALJ's citation to these activities as a whole therefore does not support her conclusion that plaintiff would not ever require a cane throughout the workday, even when limited to sedentary work.

At oral argument, the Acting Commissioner cited to SSR 96-9p, arguing that the record does not contain the requisite medical documentation to establish that use of a cane in any capacity was medically required in this case.  However, such a determination is not for me to make in the first instance.  The ALJ did not discuss SSR 96-9p or provide any analysis regarding whether she considered the relevant considerations in that policy when finding that plaintiff did not need a cane as a result of being limited to sedentary work.  Nor, again, is it clear that she considered whether plaintiff would require the use of a cane during the two hours he would need to stand or walk while performing sedentary work.

This court has previously noted that "[a] cane need not be prescribed to be considered medically necessary, but there must be specific medical documentation establishing the need for it and the circumstances surrounding that need," and that "when there is medical documentation about a cane in the record, an ALJ's failure to determine whether a cane is medically necessary or to incorporate the use of a cane into the RFC is legal error." *See Christine Lee S. v. Comm'r of Soc. Sec.,* 20-CV-1008, 2022 WL 103108, at \*4-5 (N.D.N.Y. Jan. 11, 2022) (Hummel, M.J.). Although there is no clear medical opinion that plaintiff required a cane, the statement from Dr. VanValkenburg together with the documentation that plaintiff was indeed continuing to use a cane at medical appointments with concurrent observations of an antalgic gait raise a question that the ALJ had a duty to answer, at least to the extent of considering whether this evidence constituted sufficient medical documentation of the need to use a cane in some capacity. *See Sean W. v. Comm'r of Soc. Sec.*, 20-CV-1653, 2022 WL 472570, at \*3-4 (W.D.N.Y. Feb. 16, 2022) (finding remand warranted where the ALJ failed to engage in the analysis of assessing whether a cane was medically necessary despite the wealth of evidence in the record showing the need for a cane, including observations he used a cane with an antalgic gait, diminished reflexes, weakness, and other

16

observations on various occasions).

Because the ALJ's failure to adequately explain how she accounted for the evidence that plaintiff was using a cane during medical appointments even after his third surgery when determining that he would not require any use of a cane during the two hours for standing or walking inherent in performing sedentary work, I find that her decision is insufficiently clear to allow for meaningful review of whether her omission of any use of a cane from the RFC finding is supported by substantial evidence. Additionally, because there is no regulatory or evidentiary indication that plaintiff could still perform a significant number of jobs in the national economy if a limitation for the use of a cane while walking or standing when performing sedentary work was included in the RFC, I find that this error is not harmless, and remand is therefore warranted. *See* SSR 96-9p (noting that an individual who requires the use of a hand-held assistive device for aid in walking or standing because of an impairment impacting one lower extremity or to reduce pain "*may* still have the ability to make an adjustment to sedentary work that exists in significant numbers," but that, in such a situation, "it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work") (emphasis added).

17

2.    The ALJ's Finding of Sedentary Work

Plaintiff also argues that the ALJ erred by failing to fill a gap in the administrative record created by the inadequacy of the existing opinion evidence, despite acknowledging that such gap existed.  Dkt. No. 17, at 14-18.

The ALJ found that the opinions from consultative examiner Dr. Kalyani Ganesh and non-examining state agency physician Dr. Sheela Padmaraju were "only partially persuasive," because Dr. Ganesh's opinion was rendered less than two months after plaintiff's first left ankle surgery and before plaintiff showed improvement in his ability to bear weight on his foot, and Dr. Padmaraju's opinion that plaintiff could perform a range of light work was speculative and based on an incomplete record.  AT 19. The ALJ also found that both opinions were inconsistent with and unsupported by the evidence received at the hearing level, including the need for additional surgeries and the fact that plaintiff eventually was able to bear weight again after those additional surgeries.  AT 19.  The ALJ instead found that, "considering the claimant's complete medical history," plaintiff remained able to perform sedentary work.  AT 19.  As part of that finding, the ALJ explicitly discussed plaintiff's surgical history as well as some treatment notes and objective findings therein.  AT 18-19.

As to plaintiff's argument that the ALJ's recognition that neither of the two medical opinions provides an accurate assessment of plaintiff's overall functioning amounted to an acknowledgment that the record contained an evidentiary gap that needed to be filled, I find that argument unpersuasive. To the extent that plaintiff argues that an ALJ requires a medical opinion to assess the RFC in all cases, or that the absence of a medical opinion supporting the ALJ's findings necessarily creates a gap in the record, that assertion is contradicted by the governing case law. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) (noting that a medical opinion providing the specific restrictions reflected in the RFC determination "is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,'" and finding that there was no gap in the record giving rise to an obligation to seek a medical opinion where the plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations") (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)).  In a case like this one, where the plaintiff's pertinent impairments are purely physical and susceptible to objective verification and observation, an ALJ is generally capable of assessing the level of restriction from the evidence as a whole without there being a gap in the record formed by the absence of a

19

medical opinion.

Plaintiff relies on *Travis L. v. Saul*, 19-CV-0663, 2020 WL 5633823 (N.D.N.Y. Sept. 21, 2020) (Hummel, M.J.), to support his argument in this regard.  That case, however, is distinguishable for multiple reasons.  First, *Travis L.* was decided pursuant to the former regulations related to assessing opinion evidence that have since been amended, whereas this case is governed by the amended regulations.  Second, that case involved a situation where the ALJ rejected an uncontradicted medical opinion, which required the ALJ to provide an overwhelmingly compelling reason to reject it, something which is not the case here given that the opinions of Dr. Ganesh and Dr. Padmaraju express very different degrees of functional abilities.  Indeed, Magistrate Judge Hummel, in explaining the decision in *Travis L.*, acknowledged that an ALJ is permitted to base the RFC on evidence other than medical opinions, including medical treatment records and activities of daily living, but found that the record in that case simply was not overwhelmingly compelling.  *Travis L.*, 2020 WL 5633823, at *10.  Third, Magistrate Judge Hummel found a gap existed in the record in *Travis L.* based on the nature of the plaintiff's impairments – which consisted of a testosterone disorder, a learning disorder, and cannabis abuse –, the limited medical information in the record, and the lack of further opinion

evidence. *Travis L.*, 2020 WL 5633823, at *10.  By contrast, in this case, plaintiff's impairments are more susceptible to objective signs and findings and therefore easier for a layperson such as the ALJ to assess the resulting functional effects from the medical records, and the ALJ had the opportunity to review nearly 1000 pages of treatment records when making that assessment.  *Travis L.* therefore does not support plaintiff's argument that a gap exists in the record that would have prevented the ALJ from appropriately assessing plaintiff's physical functioning.

Nor is it apparent that the ALJ's conclusion that plaintiff can perform sedentary work is not supported by substantial evidence in the absence of a corresponding medical opinion.  Plaintiff argues that the ALJ's finding of sedentary work is not supported by the evidence because (1) her "mere recitation" of the testimony and summarization of evidence in the record is insufficient to provide an explanation; (2) she relied on a mischaracterization of the record when stating that plaintiff had not had much treatment for his back impairment since the alleged onset date because that finding ignored the fact he continued to take medication for back pain; (3) she relied on an erroneous mischaracterization of the record by asserting that plaintiff's ankle impairment complications were primarily due to his noncompliance with recommendations to remain non-

weightbearing and to keep his cast or splint dry and clean; and (4) she erred in attempting to rely on his reported activities of daily living as proof that he could perform sedentary work.  Dkt. No. 17, at 19-25.

The ALJ provided some explicit discussion of the treatment evidence in her decision to indicate how she reached her assessment of an ability to perform sedentary work, and, contrary to plaintiff's argument, that discussion allows the court to discern what evidence she was relying upon to make that determination.  Additionally, plaintiff does not point to any medical evidence that would be suggestive of overall greater limitations. Notably, although the record documents that plaintiff certainly had difficulties and even periods of inability to bear weight due to recovery from his first two surgeries, once he was weightbearing again, he was often noted to have a smooth, even, and well-balanced gait while wearing a recovery boot.  *See, e.g.*, AT 537, 544, 553, 558, 563, 568.  Notably, by March 2018, approximately five months after his second surgery, it was noted that his ambulation had improved significantly.  AT 541.  Plaintiff's ambulation again became worse beginning in June 2018, when it was noted he had swelling, limited ankle range of motion, and moderate discomfort with weightbearing due to a failure of the union in his ankle joint. AT 532, 1158.  Plaintiff underwent a third surgery in August 2018, after

which he remained non-weightbearing until November 2018.  AT 702, 720.

By mid-December of 2018, Dr. VanValkenburg encouraged him to progress

to one-hundred percent weightbearing with use of a CAM boot.  AT 714.

Although he suffered an exacerbation of gout in his left foot in January of

2019, that was quickly resolved with medication, and Dr. VanValkenburg

noted in May of 2019 that, although plaintiff still had some pain, his ankle

seemed to be improving and he was released from all restrictions.  AT 818,

830, 843-44.  It is true that treating physician Dr. Laura Martin observed

throughout 2019 that plaintiff still had chronic ankle swelling, walked with

an antalgic gait, and used a cane for assistance with ambulation.  AT 1092,

1096-97, 1103, 1113-14.  However, the fact that plaintiff still experienced

some difficulty with his ankle is not necessarily inconsistent with the ALJ's

finding of an ability to perform sedentary work, and plaintiff has not met his

burden to demonstrate that the ALJ's assessment of the evidence was so

unreasonable that any factfinder would have to conclude otherwise.  *Brault*,

683 F.3d at 448.

Regarding the ALJ's statement that plaintiff did not receive any

significant ongoing treatment for his back impairment after the date of

alleged onset, such statement is not necessarily contradicted by the record.

Although plaintiff is correct that he continued to take pain medications, and

that Dr. Martin continued to list his spinal impairment as an active
diagnosis, there is no evidence of other ongoing treatment related to his
back.  The ALJ acknowledged that plaintiff was continuing to take pain
medications, and plaintiff has offered no evidence of how his back pain
would result in greater limitations, nor are greater limitations related to his
back documented by the evidence in the record for the relevant time
period.

As to plaintiff's argument that the ALJ erroneously found that
plaintiff's non-compliance related to post-surgery weightbearing and care of
his cast or splint was indicative of an ability to perform sedentary work, it is
not clear that the ALJ used plaintiff's non-compliance as evidence that
plaintiff could perform sedentary work.  The ALJ certainly noted that
complications of delayed wound healing, infection, and the need for
additional surgeries appeared to be due to claimant's failure to follow
instructions to remain non-weightbearing and to keep his cast and/or splint
clean and dry during the healing process.  It does not appear, however,
that the ALJ used the fact that plaintiff was attempting to bear weight during
his period of healing from surgery as evidence he remained capable of
performing sedentary work.  Rather, this notation appears to have been
part of the assessment of whether plaintiff's statements regarding the

intensity, persistence, and limiting effects of his ankle impairment were consistent with the evidence as a whole.  Indeed, although plaintiff argues that "[t]he ALJ appears to infer that non-compliance equates to no limitations," such an interpretation is not consistent with the ALJ's stated findings, which were that plaintiff, far from having no limitations, was limited to sedentary work.  Dkt. No. 17, at 21-22.  Given that the record clearly supports that plaintiff was non-compliant on multiple occasions with regard to weightbearing restrictions in particular, and in the absence of any indication the ALJ relied on this non-compliance as affirmative evidence that plaintiff can perform sedentary work, the ALJ's notation concerning his non-compliance does not constitute an error in her assessment of plaintiff's RFC.

Lastly, as to plaintiff's argument that the ALJ erroneously relied on plaintiff's reported activities as evidence he could perform sedentary work, I note that I have already recognized that there are some issues with the ALJ's consideration of plaintiff's activities inasmuch as she failed to consider them in their full context as reported.  However, the ALJ provided multiple other sufficient bases to support her finding that plaintiff could perform sedentary work, and I therefore find that any errors in assessing plaintiff's daily activities notwithstanding is harmless error in this context.

As was previously discussed, although there is an unanswered question as to whether plaintiff should have been found to be required to use a cane while performing sedentary work, I find that there is nothing in the record that clearly undermines the ALJ's finding that, overall, plaintiff retains the capacity to perform the exertional demands of sedentary work.  I note that, however, because this matter is being remanded on other grounds, upon reconsideration, the ALJ should endeavor to provide a more fulsome explanation of her findings related to the RFC and consider any new evidence that might be received to determine whether a sedentary RFC without any additional restrictions remains warranted.

3.   The ALJ's Findings Regarding the Opinion from LCSW Zeppetello

Plaintiff also argues that the ALJ erred by failing to reconcile finding that the opinion from LCSW Zeppetello was persuasive with failing to adopt that source's limitation that plaintiff would be absent one day per month. Dkt. No. 17, at 12-14.  In finding plaintiff's mental impairment to be non-severe at step two, the ALJ concluded that the opinion from LCSW Zeppetello that plaintiff had unlimited or very good abilities in every area of work-related mental functioning was persuasive.  AT 16-17.  The ALJ did not specifically mention the portion of that opinion in which LCSW Zeppetello opined that plaintiff would be absent from work one day per

month due to his impairment or treatment, or explain whether she also found that portion of the opinion persuasive.  AT 1036.

I find no error in the ALJ's failure to clearly reject this specific limitation because it is clear from the ALJ's explanation of her assessment of plaintiff's mental impairment that she did not find it persuasive.  First, the ALJ specifically stated that she found to be persuasive LCSW Zeppetello's opinion that plaintiff has unlimited or very good abilities; she did not state that she found his whole opinion persuasive.  This is not error, as an ALJ is not required to adopt any one opinion in its entirety.  *See Dale A. M. v. Comm'r of Soc. Sec.*, 19-CV-1150, 2021 WL 1175160, at *26 (N.D.N.Y. March 29, 2021) (Scullin, J.) (noting that "the ALJ's RFC finding need not perfectly track the entirety of one specific medical opinion from the record so long as it is consistent with the record as a whole") (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

Second, although the ALJ did not provide an explicit rationale for rejecting that limitation in LCSW Zeppetello's opinion, the ALJ's explanation regarding her step two finding provides sufficient information to glean her rationale.  The ALJ found that, based on the medical evidence and plaintiff's reported activities of daily living, which the ALJ acknowledged were reportedly limited only due to his physical abilities, plaintiff had no

27

limitations in the relevant four domains related to the "B criteria" for assessing mental impairments.  AT 16.  The ALJ also found persuasive the opinions from non-examining state agency psychologist Dr. Margaret Momot-Baker, who found no more than mild limitations related to the "B criteria," and consultative examiner Dr. Jeanne Shapiro, who also found no more than mild limitations and opined that plaintiff's mental impairment was not significant enough to interfere with his ability to function on a daily basis.  AT 16.  Of particular note, Dr. Shapiro found that plaintiff had no limitations in his ability to sustain an ordinary routine and regular attendance at work.  AT 377.

The ALJ clearly found that plaintiff's mental impairment did not impose limitations on his work-related functioning, and, given that the opinion from LCSW Zeppetello was based solely on plaintiff's mental impairment, as evidenced by the diagnoses listed on the opinion form, the ALJ's greater analysis, including reliance on other opinion evidence, allows me to glean her rationale for implicitly rejecting LCSW Zeppetello's limitation regarding the need to be absent one day per week.  I therefore conclude that this is not an error requiring remand.

IV.    SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the

28

plaintiff in support of his challenge to the Commissioner's determination, I find that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 17) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 22) be DENIED, the Commissioner's decision be VACATED, and this matter remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     March 24, 2022
           Syracuse, NY
                                        _____
                                        DAVID E. PEEBLES
                                        U.S. Magistrate Judge